**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
|     Plaintiff, | )    No. CR 08-01376-TUC-FRZ(JM) |
| | ) |
| v. | )    **REPORT AND RECOMMENDATION** |
| | ) |
| John V. Wigglesworth, and | ) |
| Nicole Lynn Thomas, | ) |
| | ) |
|     Defendants. | ) |

Pursuant to Minute Entry Order dated October 9, 2008, this matter was referred to Magistrate Judge Jacqueline Marshall for all pretrial matters. On March 26, 2009, Defendant John V. Wigglesworth filed a Motion to Suppress (Docket No. 33) and on March 31, 2009, Defendant Nicole Lynn Thomas filed a Notice of Joinder in Motion to Suppress (Docket No. 36). Arguments were heard on April 28, 2009.[1] Defendants were present and represented by counsel. Having considered the matter, the Magistrate Judge recommends that the District Court deny Defendants' Motion to Suppress.[2]

## I.    FINDINGS OF FACT:

On August 12, 2008, at 8:45 p.m., Detective Hart, a Tucson Police Department detective for over 14 years, called Pima County Superior Court Judge Bernini and requested that a telephonic search warrant be issued to search the premises located at 1035 East 28th

---

[1]As no testimony was taken, the Magistrate Judge did not order that a transcript of the hearing be prepared.

[2]Trial is scheduled before the District Court on May 19, 2009.

Street in Pima County.  Detective Hart described the residence to be searched and stated that

he was investigating the crime of unlawful possession of a narcotic drug for sale.  With

respect to the property to be seized, Detective Hart stated that he would be searching for

narcotic drugs, drug related moneys, records and ledgers relating to the distribution of drugs,

paraphernalia, firearms and any other fruits, or instrumentalities or evidence of the crime of

unlawful possession of a narcotic drug for sale.  In support of the warrant, Detective Hart

stated in relevant part:

> Within the last twenty-four hours a reliable confidential source went to the residence at 1035 East 28 [th] to purchase crack cocaine.  In the residence the informant observed a subject in the front room of the house with several ounces of crack cocaine.  The informant entered the house with our money and returned from the house (Chirp noise) with the crack cocaine.  Your Honor, I believe it's necessary for the, the pardon me, since this evidence after 10:00 p.m. And before 6:30 a.m. because the time is now 21 or 2050 hours ah, and the warrant may possibly not be served before 10:00 p.m. tonight for the safety of the SWAT officers to conduct their briefing.  And also because of the crack cocaine involved is an easily moved substance and if left in place longer than that it may be destroyed or moved prior to the arrival of the officers to served the search warrant.

Docket No. 33, p. 21:1-12.

> Okay your Honor.  Reference that warrant we'd like to request that warrant be a "no knock" warrant based on the ah, the, the way the crack trade is conducted and the weapons that are often, often involved for the saving of the evidence and the protection of the officers serving the warrant we'd like to request a "no knock" warrant.

*Id*., p. 23: 7-11.

Based on Detective Hart's sworn statement, Judge Bernini made a finding of probable

cause and issued the search warrant.  Judge Bernini authorized the warrant as a nighttime,

"no-knock" search.  The warrant was executed at 10:53 p.m.

## II.      CONCLUSIONS OF LAW

A..      <u>Probable Cause to Search</u>

The law requires that a reviewing court give the judge issuing the warrant great

deference and it is not the function of a reviewing court to state what elements of proof the

issuing judge should have considered indispensable in making its determination. *United*

- 2 -

*States v. Giacalone*, 541 F.2d 508, 514 (6[th] Cir. 1976).  Thus, there are no technical rules establishing a quantum of evidence necessary to support a finding of probable cause.  *Id.* The purpose of the reviewing court's inquiry is merely to determine from the facts set forth in the affidavit and the permissible inferences to be drawn therefrom whether the issuing judge's decision to issue the warrant was arbitrary because the affidavit contained no information which, if credited, was sufficient to establish probable cause.  *Id.*

An affidavit is sufficient in its showing of probable cause if it shows some of the underlying circumstances supporting the affiant's belief which could lead a person of reasonable caution to conclude that evidence of a crime has been committed and will probably be found in the place sought to be searched.  *Id.*  This "common-sense and realistic fashion" approach is all that is required because warrants are often sought on short notice and for the purpose of preventing the destruction of evidence.  *Id.*  Because "they are normally drafted by nonlawyers in the midst and haste of a criminal investigation," the technical requirements of elaborate specificity once exacted under common law pleadings have no place in this area.  *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Here, Detective Hart conveyed to Judge Bernini that within the last 24 hours, a "reliable" informant went to a specific house to purchase crack cocaine.  In the front room of the house, the informant saw a person with several ounces of crack cocaine.  The informant entered the house with the Detective's  money and came out of the house with crack cocaine.

Assuming the reliability of the informant, if the Court reviews Detective's Hart statement in a commonsense, non-technical manner, the most probable conclusion is that a crime was committed (during the last day, someone in the home sold crack cocaine) and evidence of that crime (more crack cocaine, drug related money, records, ledgers, paraphernalia, firearms and/or other fruits or instrumentalities of that crime) will likely be found in the house.  The Court finds that the search warrant was properly founded upon probable cause.

1

      B.    <u>Reliability of Confidential Informant</u>

2        In determining the value of an informant's report in establishing probable cause, a

3 judge issuing a warrant assesses an informant's "veracity," "reliability," and "basis of

4 knowledge" under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230

5 (1983). Veracity may be established in a number of ways: when the informant has provided

6 accurate information on past occasions; when the information provided in the past involved

7 the same type of criminal activity as the current information; when the informant has made

8 admissions against penal interest; and when the details of the information provided have been

9 independently corroborated by the police. *United States v. Angulo-Lopez*, 791 F2d 1394,

10 1398 (9th Cir. 1986).

11        Here, the informant's basis of knowledge is exceedingly strong. He conveyed through

12 personal knowledge that within the last 24 hours, he "observed a subject in the front room

13 of the house with several ounces of crack cocaine." The informant conveyed first hand that

14 he purchased crack cocaine from that person within the last 24 hours. The defense argues

15 that Detective Hart made no showing that the informant was frisked before entering the

16 house, that there was continuous surveillance of the house, or that the substance was in fact

17 crack cocaine. These omissions are not fatal. It was entirely permissible for Judge Bernini

18 to infer that when Detective Hart said the informant went into the house "with our money"

19 it was Detective Hart who had provided the money. Likewise, it was permissible for Judge

20 Bernini to infer that when Detective Hart said the informant came out of the house "with the

21 crack cocaine" it was Detective Hart who saw the substance. And in his 14-plus years as a

22 police officer, Detective Hart reasonably believed the substance was crack cocaine.

23        The Defense correctly argues that the informant's veracity and reliability are weak.

24 Detective Hart made no showing that the informant had in the past provided law enforcement

25 with accurate information regarding drug distribution or that he had on occasions, other than

26 the present, purchased drugs from someone in the house. Instead, Detective Hart just called

27 his source "reliable" and Judge Bernini just accepted it as so. Although a question or two

28

1   regarding the informant's reliability would have been helpful, it was not required.  As a
2   judicial officer, Judge Bernini was free to infer that when Detective Hart provided the
3   informant with the money for the drug purchase and then saw the substance after the
4   purchase, he "independently corroborated" the details of the information provided the
5   confidential source.  *See Angulo-Lopez*, 791 2d at 1396 (Under the *Gates* test, a weakness
6   in either the "veracity"or "basis of knowledge" prong is not fatal to a finding of probable
7   cause, as long as the issuing judge has a "substantial basis" for the finding.  Evidence bearing
8   on the veracity of the informant and his basis of knowledge is considered together with other
9   relevant evidence in making the probable cause determination based on the totality of the
10  circumstances.).

11      The Court finds that under the totality of the circumstances, there was a substantial
12  basis for the issuing judge to find probable cause and issue the search warrant.  Should the
13  District Court disagree with this finding, the search would nonetheless be valid under the
14  good faith reliance exception.  *See United States v. Crews*, 502 F.3d 1130, 1137 (9th Cir.
15  2007) (If there is a colorable argument that the search was supported by probable cause, then
16  an officer's reliance on it was objectively reasonable.).

17      C.   Nighttime Search

18      Pursuant to Arizona statute, "Upon a showing of good cause therefor, the magistrate
19  may, in his discretion insert a direction in the warrant that it may be served at any time of the
20  day or night. In the absence of such a direction, the warrant may be served only in the
21  daytime. For the purposes of this section night is defined as the period from ten p.m. to
22  six-thirty a.m."  A.R.S. § 13-3917.

23      The crucial question is whether the affidavit, as a whole, is sufficient to support a
24  finding of "good cause."  *Arizona v. Jackson*, 571 Pd 266, 268 (Ariz. 1977).  "The only
25  requirement is that there be cause for carrying on the unusual nighttime arrest or search that,
26  upon showing made, convinces the magistrate that it is reasonable."  *United States v. Curry*,
27  530 F2d 636, 637 (5th Cir. 1976).  *See also State v. Eichorn*, 143 Ariz 609, 614 (1984) (good

28

- 5 -

cause found where two night sales of narcotics, not just allegations of suspected sales, reasonably supported an inference that the contraband might not be present on the subject premises the next morning).

Here, Detective Hart called Judge Bernini at 8:45 p.m. and executed the search warrant a little over 2 hours later at 10:53p.m.  Under the statute's definition of "night," Detective Hart had until 10:00 p.m., or approximately one hour and fifteen minutes, to execute the warrant before it was considered a "nighttime" search.  In that short period of time, Detective Hart did not believe he could adequately and safely brief and assemble his team of officers to conduct the search, so he requested a nighttime warrant.  Based on his statement that "the warrant may possibly not be served before 10:00 p.m. tonight for the safety of the SWAT officers to conduct their briefing" as well as his statement that "because of the crack cocaine involved is an easily moved substance and if left in place longer than that it may be destroyed or moved prior to the arrival of the officers to served the search warrant," Judge Bernini issued a nighttime search warrant. Detective Hart's statements clearly met the requirements of "good cause."   The nighttime search was properly allowed.

D.    No-Knock Entry

Arizona embraces the practice of allowing judges to issue no-knock warrants when sufficient cause can be demonstrated ahead of time.  "On a reasonable showing that an announced entry to execute the warrant would endanger the safety of any person or would result in the destruction of any of the items described in the warrant, the magistrate shall authorize an unannounced entry."  A.R.S. § 13-3915(B).

Here, Detective Hart justified his request for a no-knock warrant by referring to "the way the crack trade is conducted," "the weapons that are often involved for the saving of the evidence" and "the protection of the officers serving the warrant." His statements were in no way particularized to the residence or to any of its occupants.  The Court finds that such generalized knowledge does not amount to a "reasonable showing" that evidence will be destroyed or someone's safety will be endangered. *See Richards v. Wisconsin*, 520 U.S. 385,

396 (1997) (rejecting blanket exception to knock-and-announce requirement for felony drug investigations but finding forced entry reasonable because after opening motel room door first time, occupant knew men seeking entry were police); *State v. Bamber*, 630 So.2d 1048, 1055 (Fla. 1994) (generalized knowledge as a police officer and presence of small quantity of disposable contraband in home with standard plumbing held not a "reasonable showing"); *Wilson v. State*, 673 So.2d 505, 510 (Fla.App. 1996) (not enough that occupant known to carry a weapon at some time in the past).

The Court finds that the no-knock portion of the search warrant was improperly issued and executed. Suppression of evidence based on this failure, however, is foreclosed by the Supreme Court's decision in *Hudson v. Michigan*, 547 U.S. 586, 588 (2006) where the Court found:

> The interests protected by the knock-and-announce rule include human life and limb (because an unannounced entry may provoke violence from a surprised resident), property (because citizens presumably would open the door upon an announcement, whereas a forcible entry may destroy it), and privacy and dignity of the sort that can be offended by a sudden entrance. But the rule has never protected one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests violated here have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable.

*Hudson*, 547 U.S. at 587-588.

## III.    RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE

Based on the foregoing, and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona,

THE MAGISTRATE JUDGE RECOMMENDS that the District Court, after an independent review of the record, DENY Defendants' Motion to Suppress (Docket Nos. 33, 36).

/ / /

/ / /

/ / /

/ / /

1    Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections with

2  the District Court within ten days of being served with a copy of this Report and

3  Recommendation.  If the objections are not timely filed they may be deemed waived. If any

4  objections are filed, this action should use case number: CR 08-01376-TUC-FRZ.

5    DATED this 1st day of May, 2009.

6

7    _Jacqueline Marshall_

8    Jacqueline Marshall
     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    - 8 -